UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,　　　　　Case No. 10-20380

　　　　　Plaintiff,　　　　　　　　　Sean F. Cox
vs.　　　　　　　　　　　　　　　　United States District Judge

DEMITRIUS DANYEL CONERLY,　　　　Michael Hluchaniuk
　　　　　　　　　　　　　　　　　United States Magistrate Judge

　　　　　Defendant.
_____/

## REPORT AND RECOMMENDATION
## DEFENDANT'S MOTION TO SUPPRESS (Dkt. 14)

## I.　PROCEDURAL HISTORY

Defendant was indicted on June 16, 2010, and charged with a single count of possession of five grams or more of cocaine base, as well as forfeiture allegations allegedly committed on January 29, 2009.[1]  (Dkt. 1).  The government filed a discovery notice on June 24, 2010.  (Dkt. 11).  The present motion was filed on July 21, 2010.  (Dkt. 14).  The response of the government to the motion was filed on August 3, 2010.  (Dkt. 18).  Pursuant to notice, an evidentiary hearing was held on September 7, 2010.  (Dkt. 16)

## II.　POSITIONS OF THE PARTIES

_____

[1] The indictment actually alleges that the offense took place on January 29, 2010, but the police reports in this matter reflected the date of January 29, 2009, and the earlier date was agreed to by government counsel during the evidentiary hearing on this motion.

Defendant's submission notes that discovery material turned over by the government reflects that a vehicle defendant was driving was stopped on January 29, 2009 in Flint, after allegedly failing to signal before turning.  Defendant further notes that officers approached defendant's vehicle and asked if he had any contraband in the car.  According to the report, defendant then handed the officer a marijuana cigarette and was subsequently arrested and the vehicle was searched.  Defendant denies that he committed a traffic violation before being stopped, but contends that, even if he had, the search of the vehicle was not proper based on the arrest for a traffic offense under *Arizona v. Gant*, — U.S. —,129 S.Ct. 1710 (2009).  Defendant also argues that the search could not be justified as an inventory search.[2]

In its submission, the government argued that defendant's vehicle was properly  stopped because a police officer observed him commit a traffic violation.  After the traffic stop a police officer asked defendant if he had any contraband in the car and defendant then handed the officer a marijuana cigarette.  The government maintained that defendant was then arrested for possession of marijuana and the vehicle was searched incident to his arrest for possession of marijuana, rather than an arrest for the traffic violation.  In that defendant was

---

[2] The government does not attempt to justify the search as an inventory search, so no further analysis of that point will be made here.

Report and Recommendation
Defendant's Motion to Suppress
*U.S. v. Conerly*; Case No. 10-20380

arrested for the controlled substance offense, the government argued that the principles of *Gant* do not apply to the circumstances of this case. Alternatively, the government argues that the search was also justified because there was probable cause to search the vehicle, independent of defendant's arrest, based on defendant handing the officer the marijuana cigarette. No warrant was necessary under this theory of the government, based on the automobile exception to the warrant requirement.

## III.   EVIDENTIARY HEARING[3]

The first witness to testify at the hearing was William Renye, a Grand Blanc police officer, who was assigned to a drug unit in the Flint area on January 29, 2009. Officer Renye observed a white vehicle, at approximately 4:30 PM, that he identified as a rental vehicle being driven in a residential area, which was considered to be a high crime part of town with drug trafficking activities. While observing the white vehicle, Officer Renye saw the vehicle execute a turn without signaling, which Officer Renye knew to be a violation of the traffic laws. The vehicle defendant was driving stopped on west-bound Josephine Street and failed to signal a turn on to north-bound Iroquois Avenue. Officer Renye was driving an unmarked unit and radioed another officer, Michigan State Police Trooper Scott

---

[3] No transcript of the hearing was requested by the parties. The recitation of facts in this document are based on the recollection and notes of the undersigned as well as a review of the audio recording of the hearing.

Adams, who was driving a marked police unit, to effectuate a traffic stop on the white vehicle.

After the white vehicle stopped, Trooper Adams went to the driver's side of the vehicle and spoke to the driver, later identified as defendant. Officer Renye went to the passenger side of the vehicle. Officer Renye heard Trooper Adams ask defendant if there was any contraband in the car and Officer Renye observed defendant hand Trooper Adams what appeared to be a marijuana cigarette. Defendant was then removed from the car and arrested for possession of marijuana. Officer Renye testified that defendant was taken to Trooper Adams's patrol vehicle and he was placed in handcuffs. Defendant's car was then searched and additional quantities of controlled substance were found hidden under a cup holder inside the passenger compartment of the vehicle by a third officer, Scott Watson, who had also come to the scene.

The second witness for the government was Trooper Adams. He testified that he stopped defendant's vehicle at the request of Officer Renye and went to the driver's side of the vehicle where he explained the reason for the stop and asked to see defendant's license and registration. Defendant provided Trooper Adams with the documents in the car regarding use or ownership of the car and then Trooper Adams asked defendant whether there was any contraband in the car. Defendant responded by handing Trooper Adams a marijuana cigarette. Defendant was then

removed from the car and arrested for possession of marijuana. Defendant was taken to Adams' vehicle and remained there, with Adams, while Renye and Watson searched defendant's vehicle.

The third government witness was Flint Police Officer Scott Watson. Officer Watson testified that he was working in an undercover capacity on January 29, 2009, and heard Officer Renye call out the traffic stop based on a failure to signal a turn. Officer Watson went to the area of the traffic stop and arrived there after defendant's vehicle had been stopped and defendant was outside of his vehicle. Officer Watson participated in the search of defendant's car and found a quantity of drugs under the cupholder in the vehicle.

Officer Renye returned to the witness stand as a witness for the defense. His testimony as part of the defense case related to the timing of a *Miranda* waiver form, which related to a statement allegedly made by defendant in this case.

Defendant testified that he was driving a vehicle on January 29, 2009, and recalled being stopped by a police officer. Defendant was confident that he had used his turn signal when he turned right on Mason from west-bound Josephine Street just before he was stopped on Hamilton Avenue. Defendant recalled that the officer approached his vehicle and asked for his license and for "paperwork," which defendant provided. The officer then asked defendant if he had "anything" and defendant gave the officer a "blunt," which is a type of marijuana cigarette.

Report and Recommendation
Defendant's Motion to Suppress
*U.S. v. Conerly*; Case No. 10-20380

Defendant did not know the officer who pulled him over and did not know Officer Renye. Defendant knew Officer Watson from an incident in 2008. After his car was searched and the drugs were found, defendant stated that he was then handcuffed, put in a police vehicle, and taken to a Travel Inn motel where he had been staying. After searching the motel room where he had stayed, defendant was released and the car returned to him.

## IV. ANALYSIS AND CONCLUSIONS

### A. Traffic Stop

Police officers are allowed to stop a motor vehicle if they have probable cause to believe that the driver of the vehicle has committed a civil infraction. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2007).[4] Probable cause is, of course, a significantly lower hurdle than proving the commission of the offense beyond a reasonable doubt. "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *Id*.

In the present case, Officer Renye testified that he observed defendant turn the corner without signaling a turn. Defendant does not dispute that such an observation, if true, would constitute probable cause that the offense was

---

[4] A conflict exists as to whether the standard in this Circuit for stopping a vehicle for a civil infraction is probable cause or reasonable suspicion. *Blair*, 524 F.3d at 748, n. 2. Given that the parties in this case rely on the probable cause standard and that would be the higher of the two, that will be the standard applied in these circumstances.

committed. However, defendant denies that he failed to signal his turn. Defendant's testimony is not reconcilable with that of Officer Renye and, therefore, the first step in this analysis is a credibility determination. Officer Renye, a nine and a half year veteran of the Grand Blanc Police Department testified that he was on routine patrol in a high crime rate area of Flint while working in an undercover capacity. The officer said that he observed a vehicle that was believed to be a rental car driving in this neighborhood, which is a suspicious event in his experience because rental cars are often used by individuals who traffic in drugs. The officer proceeded to follow the vehicle although he could not identify the driver. The officer said that he observed the vehicle turn a corner without signaling, a violation of the traffic code, and then summoned another officer to effectuate the traffic stop. Defendant denies that he failed to signal his turn and was "sure" that he had used his turn signal. No other witnesses testified about these events and there was no other evidence directly bearing on the issue.

Weighing the relative credibility of Officer Renye as compared to defendant, the undersigned credits Officer Renye's version of the events. Officer Renye would seem to have no motive to fabricate his testimony merely to implicate defendant. He did not observe the driver of the car until it had been stopped so no personal bias against the defendant was present. The police report, as acknowledged by defendant, reflected that the stop was based on the traffic

violation, which was consistent with the officers in-court testimony. His demeanor on the witness stand did not suggest false testimony. While there were minor inconsistencies in the testimony of the officers, there was consistency regarding the basis of the vehicle stop and the subsequent search.

On the other hand, defendant has a clear motive to falsify his testimony - he could very well view this as an opportunity to avoid these criminal charges. Additionally, defendant's testimony was somewhat confused with respect to his location before the traffic stop and, at one point, he testified that he had signaled his turn at a different location than had been observed by Officer Renye. This credibility determination results in the conclusion that the traffic stop based on turn signal violation was proper.

While defendant did not argue that there was any improper conduct associated with the officer inquiring about the presence of contraband in defendant's vehicle, it is clear that such questioning is proper. Trooper Adams, the officer who stopped defendant, was under no obligation to inquire about the traffic offense. *United States v. Herbin*, 343 F.3d 807 (6th Cir. 2003) (traffic stop for running red light, driver asked for consent to search proper even if no inquiry regarding traffic offense); *United States v. Ferguson*, 8 F.3d 385 (6th Cir. 1993) (traffic stop for no visible plate, no inquiry regarding traffic offense before probable cause search done on car); *United States v. Simpson*, 520 F.3d 531 (6th

Cir. 2008) (stop for improper plate and no inquiry regarding traffic offense before search of vehicle); *United States v. Taylor*, 496 F.Supp.2d 852 (S.D. Ohio 2006) (proper to ask for consent to search following traffic stop without inquiry regarding reason for stop). Asking questions unrelated to the traffic stop does not create a problem unless the time necessary to complete the traffic stop was measurably exceeded, which was not the case here. *Arizona v. Johnson*, — U.S. —, 129 S.Ct. 781 (2009).

The next step in this analytical sequence is determining the basis of the arrest. The uncontradicted evidence at the hearing demonstrated that defendant was arrested for being in possession of marijuana. That fact is significant in the determination of the impact of *Gant* on these circumstances. Defendant argues that *Gant* compels the conclusion that the search of defendant's vehicle was improper. In *Gant*, the Court considered a situation where police arrested an individual for driving on a suspended license and, after the suspect was handcuffed and placed in a police car, the police searched the vehicle that he had been in and found a quantity of controlled substances. Departing from its previous holding in *New York v. Belton*, 453 U.S. 454 (1981), which generally allowed the search of a vehicle a person had been in before the arrest for any offense, the *Gant* court ruled that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the

search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S.Ct. at 1723. The *Gant* court upheld the granting of the motion to suppress finding that defendant was outside of the area where he could have reached inside the vehicle and there would be no evidence of the driving on a suspended license offense inside the vehicle. The present case is distinguishable from *Gant* because defendant was arrested for possession of marijuana, not a traffic offense, and therefore, it was "reasonable to believe the vehicle contains evidence of the offense of arrest," that is, the drug offense. *Gant* does not prohibit the officers' conduct in this situation.

Defendant's reliance on *United States v. Peoples*, 668 F.Supp.2d 1042 (W.D. Mich. 2009) is likewise misplaced. In *Peoples*, the defendant was arrested for driving on a suspended license and, after he was secured inside a police vehicle, the defendant's vehicle was searched. Those facts are different than the facts in the present case. The significance of *Peoples* is that the events in question, like the events here, took place before *Gant* was decided. The *Peoples* court applied *Gant* retroactively and concluded that the search of the vehicle was improper. The decision in *Peoples* regarding the retroactive application of *Gant* was based on the earlier decision of the Sixth Circuit that *Gant* should apply retroactively, at least as to cases on direct appeal at the time of the *Gant* decision. *United States v. Lopez*, 567 F.3d 755, 757-58 (6th Cir. 2009). Based on the determination that defendant's

arrest was for a drug offense, and not a traffic offense, *Gant* does not prohibit the search of defendant's vehicle.

B.  <u>Probable Cause Search</u>

As an alternative basis for establishing the propriety of the search of defendant's vehicle, the government asserts that there was probable cause to search the vehicle and, under the automobile exception to the warrant requirement, no warrant was necessary.  The first component of this argument is the existence of probable cause.  The government contends that the act of defendant, who was sitting inside the car at the time, handing Trooper Adams a marijuana cigarette establishes probable cause that evidence of the possession of marijuana would be found inside the vehicle.  The government relies on *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993), which held that the smell of marijuana inside a vehicle constituted probable cause to search the vehicle.  The government argues, reasonably, that seeing marijuana in a car (the marijuana here was inside the vehicle before it was handed to the officer by defendant) was at least as significant a basis for probable cause as smelling marijuana.  The fact that defendant gave the officer the single marijuana cigarette does not dissipate the probable cause under the circumstances.  Logically, there could be additional marijuana in the car or other evidence of its possession in the car.  *See United States v. Crumb*, 287 Fed.Appx. 511 (6th Cir. 2008) (smell of marijuana and observation of partially

smoked marijuana cigarette constituted probable cause to search, and seizure of

cigarette did not terminate probable cause for purposes of further search).  Once

probable cause was established, the automobile exception to the warrant

requirement allows police officers to search a vehicle without a warrant.  *United

States v. Ross*, 456 U.S. 798, 823 (1982); *United States v. Pasquarille*, 20 F.3d

682, 690 (6th Cir. 1994).

## V.     RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendant's motion to suppress be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 8, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

# CERTIFICATE OF SERVICE

    I certify that on October 8, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Anthony P. Vance, AUSA, and Joan E. Morgan, and that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Pretrial Services Agency and United States Marshal Service.

s/Tammy Hallwood       
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
